Good morning, your honors. Nicholas Martin on behalf of Petitioner Garcia Delgado. As the court is aware, this is a petition for review from the Immigration and Board of Immigration Appeals. Mr. Garcia Delgado is currently in detention at Northwest Detention Center. He was placed into proceedings in July 2020. He applied for asylum withholding convention against torture and deferred. The immigration judge on October 2, 2020, denied the applications for asylum withholding, finding that he had committed a serious non-political crime. This was in part based on an Interpol notice. The IJ then issued alternative rulings denying asylum withholding and CAT and deferral. The matter was then appealed to the BIA. In November 2021, the BIA affirmed the immigration judge's decision that my client had been committed a serious non-political crime through the Interpol notice. Mr. Garcia Delgado may appears to have been charged in Mexico with forced disappearance of an individual. In reaching his decision, the immigration judge relied on the Interpol notice, which was attached to a 213. It is our position that the immigration client had been committed a serious non-political offense. So the immigration judge didn't rely just on the red notice, right? There was also a declaration from Petitioner's Criminal Defense Council in Mexico saying, I mean, the warrant itself is not in the record, but there doesn't appear to be any dispute that there is in fact a warrant. And am I right about that? That is correct. There was a declaration from counsel in Mexico. Additionally, Mr. Garcia Delgado denied involvement in it. It is our position that the Interpol notice, which was relied upon by the immigration judge, was insufficient to rely on such to say that he had committed the crime. Well, but I guess that's my point. I mean, it may be insufficient by itself, and Gonzales Castillo suggests that it is insufficient by itself, but it wasn't by itself. There's also the statement about the warrant and Petitioner's testimony corroborating at least some of the details of what happened, although obviously not admitting actual involvement in the offense. So why isn't the totality of that enough? It isn't enough, Your Honor. If you look at the declaration that was provided by counsel from Mexico, he indicates that there is an investigation. It's a very limited document into the factual consistency of those facts for the commission of the crime. He goes on to some extent, I believe two paragraphs in discussing how the informational prosecutors go about their of investigating. However, there are no sufficient facts that are supported other than there was an investigation and other that his client denied being involved. Well, with regards to counsel, isn't part of the corroboration that he was in the vicinity on the day in question when his girlfriend was kidnapped? I doubt that he was in the vicinity, Your Honor. Well, may have been. They indicate in the 213 and the attached documents that there were phone records and cell records. However, how were those used and how was it triangulated? They can say that he was in the vicinity. I thought he testified that he had had dinner or that he and she and some bodyguard named Daniel were all there together on the day of that. He testified that to I don't know if it was that specific day. And again, the interval notice doesn't give us a day when she disappeared or the crime was alleged to have occurred. The interval notice with the documents indicate that there were phone records and cell records that placed him in the vicinity. Well, the vicinity could have been 25 miles or it could have been three blocks. We don't know. And it's my position that's insufficient to support the IJ's order that he had other corroboration. Is it your view that having the arrest warrant itself in the record is essential to bolstering the reliability of a red notice? The arrest warrant is important as well as any police records of the investigation. The problem with the interval notices, and this is what I well, is that they lack any guarantees of the Fourth Amendment in the arrest of an individual. And there is case law that indicates this that I believe the Eighth Circuit and the Sixth Circuit about relying on these documents. It's our position that without the arrest warrant and further documentation of the investigation, it cannot support that he committed a serious non-political crime. I believe so. Just to be clear on that, is it your view that so having the actual arrest warrant in the record would not necessarily be sufficient? Is that right? It depends on what the arrest warrant says, you know, I guess. If it's a specific arrest warrant indicating the crime, the date of the crime, and the identification of the individual and what has led to that investigation, then that would be sufficient. However, if it's just a general arrest warrant listing out the individual's name and a potential crime with no date, that would not be sufficient and you would need more. I am very suspect of relying on any warrant that comes out of a different nation just because at times those warrants can be based on political reasons. So I would submit that while a warrant could possibly support the interval notice, it would have to have some indication of specificity as well as credibility. Counsel, let me ask you about the Catt claim. The government asked, yes. I wanted to ask, so as I understand that the IJ found him to be credible in his discussion about his having been kidnapped by a cartel and tortured, if not harmed. And from what I understand, from the time that he was released in February of 2018 to his departure in August of 2018, he was threatened several times by different members of what he claims were the police and the cartel. I take it you disagree with the agency's finding that there is no likelihood of future torture and I wanted to hear your reasons why. That is correct, Your Honor. We do disagree with the government's position that there is no indication of future torture. Through the expert that was submitted on behalf of Mr. Garcia Delgado and his own credible testimony, I think that we have established that future torture could indeed occur and there's a more than 50 percent possibility that it would. He routinely, in the time that he was released after his kidnapping, indicated that he had had problems with the police and the military. I believe, I can't remember the AR number, but there was the commander who was at his property after these facts that would sufficiently establish that he would be a victim of potential torture in the end and there would be acquiescence on the part of the government. So it's our position that the immigration judge did in fact err when he denied the catcalling after finding that Mr. Garcia Delgado was credible and with regards to the expert testimony that was provided about the links between the government and these cartels. So we believe that the IJ as well as BIA were incorrect. Well do you think the evidence compels the conclusion that it's more likely than not that he would be tortured if returned? Yes, Your Honor. And what is your strongest evidence for that position? His own credible testimony as well as the expert report that was submitted. The government submitted nothing in opposition to that report. As it was unopposed other than country reports, we submit that those plus the credible testimony is sufficient to be a basis for the relief. Well one of the things that the IJ pointed out was that it seemed speculative that the police would acquiesce or have been involved in some of these. Why is that incorrect? Your Honor, even the country reports indicate that there is some collusion between the police or the law enforcement and military between the cartels in Mexico and therefore the IJ's speculative concerns I think are not supported by the country reports themselves as well as the reports that were submitted on Mr. Garcia Delgado's behalf. You're down to about four minutes and 30 seconds. Do you want to reserve? Yes, Your Honor. I'll reserve one minute if appropriate. Okay. We'll hear from the government. Thank you. May it please the court. My name is Christina Ziden and I represent the Attorney General. We ask the court to deny this petition for review both because subservience to the evidence supports the application of the serious non-political crime bar as well as the denial of cap protection in this case. I first want to clarify a few points in this record. First of all, Mr. Garcia through his testimony specifically did admit to being with the victim named in the red notice Erika Torres on April 17, 2018, the date of her disappearance which is also provided in the these that admission appears on pages 155 through 157 where Mr. Garcia stated he was with the victim on the day that she went missing and the red notice. Yes. I was going to say that was my understanding as well but even so there's very little detail in the red notice that seems to flesh out his involvement in this other than having been present at the time which he admitted to. Wouldn't it have been incumbent to try to have on the record the arrest warrant in order to provide more corroboration or detail to substantiate the red notice? That was not necessary here because of both Mr. Garcia's concessions. So this court has never required, first of all, a non-citizen to admit their guilt for a crime. Of course, it's in Mr. Garcia's interest not to do that and this court has upheld in at least two recent published cases the application of the bar where the non-citizen did not admit their guilt for the crime. Those cases are Villalobos-Surra versus Garland. But I'm not suggesting that he needed to admit his guilt. I'm merely pointing out that the red notice only the only corroborating factor that I saw is that he was present in in the vicinity at the time of this of this kidnapping. Beyond that, it's hard to know where the facts from the red notice came from because we don't have the arrest warrant on the record and he hasn't corroborated other details that are in the red notice. So I'm just trying to understand what indicia of reliability should we accord to this red notice from the record that's before us? So this red notice also does state that Mr. Garcia made false statements to the police following the of Erika Torres and that is something that he has well stated in his testimony. In addition, our position is and we don't believe that the court needs to make this decision in this case because there is more than a red notice in this case. Our position is that this red notice is the standard here. I mean, our position is that the court doesn't need to make that decision in this case because you would agree that a red notice by itself is not enough to establish the probable cause required for a serious nonpolitical crime, correct? No, that's that's something that Gonzales Castillo versus Garland left open. That is a question. Gonzales Castillo versus Garland stated that the court was not making a per se determination that not per se, but generally our case law says you need something besides the red notice. And if I'm summarizing the testimony or your argument and add to it if you want, you're relying on the arrest warrant, his statement that he was with her at the day of the disappearance, his attorney's declaration that said there was an arrest warrant, and the fact that I guess you've said that he gave what you believe false statements to the Mexican police. Is that it? Those are, that is what we are relying on. The fact that the arrest warrant, there isn't, there doesn't, there isn't a dispute in this case that it exists. Let me ask you a follow-up question on that. In the petitioner's brief, I think on page 18, there is a reference that says in the Department of Justice manual that a red notice is not a per se. So that is the case as far as an arrest or any type of punitive action. This is a different context. So in this case, Mr. Garcia is trying to establish his eligibility for immigration benefits like asylum and withholding of, excuse me. And so in this case, and so in that sense, you know, in this case where we are, where it's Mr. Garcia's burden to demonstrate his eligibility for relief, a red notice can suffice to, our position is, and this doesn't need to be decided in this case because there is more than a red notice, but our position is that a red notice can suffice depending on what it contains. Because in this, in this context, we are, we are limited to foreign documents. And this court has acknowledged that foreign documents buttressed by other evidence, as is the case here, can suffice to demonstrate probable cause, which, which is a low standard. But the, I mean, so, so what is your view of the significance of, I mean, we don't have the actual arrest warrant, but we have, you know, a pretty good idea that there is one. I guess that's not disputed. And if you had an arrest warrant from an American court, you know, that would mean that somebody had made a finding of probable cause, as we understand that concept. We don't necessarily know that that's what an arrest warrant from Mexico means. So, how do we evaluate the significance of an arrest warrant issued by a foreign government as it relates to the probable cause standard? So, in this context, this court has held that, this, this court has held that we can rely on foreign documents. And so some, a statement that this court has made is that we can't send the FBI, even where it's economically feasible, we can't send the FBI into a foreign country to conduct a full field investigation. And so in this, in this context, and, you know, and in this context, and because of the principle of international comity, there, there is, there is some necessity towards relying on, on a red notice, on an arrest warrant as well. Because we, because we don't have necessarily the ability to investigate. Also, I mean, this, this is a case where Mr. Garcia has the burden ultimately, and Mr. Garcia, according to this record, had a copy of the arrest warrant. That is something he could have submitted himself. He could have translated himself and submitted into evidence. The immigration judge gave Mr. Garcia notice on August 26, 2020, on, at that evidence. Mr. Garcia has a criminal defense attorney in Mexico. And so that's, that sort of evidence that is, you know, from the foreign country and evidence of, you know, that, that could possibly exculpate him or that could, you know, if, if there is any sort of, any sort of vagueness or any sort of, you know, his, his claim below was that there was that he was being set up and the immigration judge found that he did not adequately corroborate that. And it is his burden here, as far as disproving probable cause. But I guess just to follow up, our case law doesn't seem to discuss the mere existence of an arrest warrant, but whether there's sufficient evidence in the record to support probable cause. And so I think the difficulty, at least as I see it, is without that arrest warrant, it's, it's a little bit difficult to know what, what to glean from the red notice, what, what information may be reliable or supportive of probable cause. So I don't know if you'd speak to that. You know, I, I take it you're, you're saying with, if, if, if a red notice has sufficient description or detail, that may be enough. But how do we know what is supporting that, that detail itself, if there's no underlying document? And so this, this red notice indicates that it is based on the contents of the arrest warrant. It's, it references the arrest warrant. It references the issue date, the, the court, as well as the judge that issued the arrest warrant. And so, and, and really here, it is Mr. Garcia's burden to show that this is unreliable, rather than the government's burden to demonstrate that this is reliable. As I, as I stated, this is a context in which we have to rely on foreign documents. And here it was Mr. Garcia's burden to demonstrate that, you know, for whatever reason, this was unreliable. He didn't meet that burden and he's waived that finding here because he, he has, he's only argued that the red notice was not sufficient to demonstrate probable cause, but he hasn't, he hasn't continued to argue that this red notice is, is the product of corruption, which is, which is what he argued below. And so this, and so this, this is a situation where Mr. Garcia has the burden to show that this document is unreliable. Right, but the government has the initial burden to establish probable cause and then the burden shifts to the petitioner. Do you agree with that? Well, so the Gonzales-Castillo v. Garland states that the agency needs to make a finding of probable cause. Excuse me. But as far as the, as far as the initial burden being on the government, I believe that the agency can rely on an evidence provided either by the government or by Mr. Garcia. And so here Mr. Garcia provided his own testimony, corroborating aspects of the red notice, provided a letter from his criminal defense attorney in Mexico, also corroborating details of the red notice and referencing the same arrest warrant. Is the agency's determination that the evidence in the record was sufficient to establish probable cause a factual finding in your view? Um, so it seems to be, it seems to be, well probable cause is a legal standard. But yes, it does, it does seem to be a factual finding because these, because it does largely rely on fact finding. Oh sure, but I mean that's true in any determination of probable cause. It's an application of law to facts. A mixed question, wouldn't you agree? That, that sounds like, that sounds correct. Counsel, can I switch gears for a second to the CAT claim? As I look at the record, I, I see that there's quite a bit of testimony here about police involvement, you know, beyond just the walkie talkie description, but about multiple raids on his home and police allegedly stealing property and, and, uh, and individuals threatening his family and him with death for a period of months after, after he was released from kidnapping. Why isn't that evidence compelling enough to suggest that it would be more likely than not that he would be tortured if, if, if returned? So first of all, that seems to be, it seems to be unclear. It's not clear that the police, it doesn't seem to be clear that the police were involved in anything more than a criminal investigation here. As far as the police threatening him, that's what Mr., that's what Mr. Garcia believes, but that's not something he necessarily established. And that's, and that's what, um, I believe that's what, that's what the agency found here. Mr. Garcia did not sufficiently establish acquiescence by the government here because he, although he believes that there is a collaboration between the police and between the, uh, CJNG, the, the cartel, he didn't provide sufficient evidence that that's happening in his case in particular. Let me follow up with that because it wasn't just his testimony, which, you know, was found credible, but also affidavits submitted by multiple people, I think a neighbor, his wife, others, his own direct testimony about speaking to a corrupt police commander. Um, I, did the BIA consider that evidence in concluding that, that the, that the cat claim had no merit or, or, or, or did it overlook it in your view? Yeah. The agency did not overlook that evidence. Um, but the agency here pointed at the fact that the cartel told Mr. Garcia or the, his, his kidnappers basically told him not to contact the police when he was allowed to contact his wife. They told him to tell his wife not to contact the police. Um, and that is, um, that appears to be part of the basis for the finding that there, um, does not that, um, that Mr. Garcia didn't meet his burden to demonstrate that there was government corruption involved here. But our case law doesn't require that every police official be corrupt in order to make out a cat claim. You know, it only so long as there are certain government officials that were, that would be willing to acquiesce to a likelihood of torture. So what, why, why does it make a difference if they said don't talk to the police, uh, as something that undoes his claims that there were corrupt police officials acquiescing to this? Agency also here, um, also made, made other findings as well. Um, he, Mr. Garcia was, um, so the, Mr. Garcia was able to travel through the country for several months, um, after his release, um, and was, and was able to, um, and, and he was able, he was able to do that without being harmed further. And so in, in addition, and so in, in addition to that, um, it's also, what does that have to do with the police, uh, the government's acquiescence? Well, and so, acquiescence is somewhat different from direct intervention. Right. And so here it's, it was, it was Mr. Garcia's burden to show that he, that in his case in particular, there would be government acquiescence and not just to provide government, not just to provide country conditions. Country conditions are not sufficient to establish Mr. Garcia's burden. Um, and so. I think Judge Sanchez, Sanchez's question was about the testimony of, of the petitioner and others that the police came to his ranch after he left and, uh, had, uh, taken some cattle or something else as well. And when they were there with the, uh, cartel, I mean, that, that seems to be the most significant testimony aside from the walkie surmise. Mr. Garcia believes that the police took his cattle and, and his other belongings, but that's not something he knows firsthand. Those are, that is his speculation. The car, the, um, the police certainly had some reason to go to his property. They were investigating him for a forced disappearance. Okay. Uh, your time has expired. Thank you for your argument. We'll move on. Just briefly, your honors, with regards to the arrest warrant and probable cause, we would submit and counter the government's contention that there was probable cause here, um, in that there wasn't sufficient factual basis that would establish probable cause. And I think the government's reliance on finding a probable cause and arrest, again, is not supported by, uh, this circuit, nor, uh, the first circuit, the eighth circuit or the sixth circuit. With regards to the cat claim, I don't believe that the BIA properly looked at all of the evidence with regard to that. I think at the end of their decision, they indicated that there was violence in Mexico and that there were criminal acts. However, they did not reference any of the So they did not, in our opinion, properly look at that evidence. That's all I have, your honors. Thank you, counsel. Thank you both for your arguments today. The case just argued will be submitted for decision, and we will proceed to the next case on the oral argument calendar show versus Carlin.
judges: THOMAS, MILLER, SANCHEZ